# L. G. JOHNSON MORNER v. MAX A. KOHEN AND ANOTHER.[1]

November 10, 1927.

No. 26,208.

**Defendants entitled to new trial because of prejudicial testimony and misconduct of attorney.**

Where testimony tending to incite prejudice was erroneously admitted, and the conduct of plaintiff's attorney also tended to incite prejudice, and the verdict is so excessive as to indicate that it was influenced by prejudice, the defendants are entitled to a new trial.

Appeal and Error, 4 C. J. p. 959 n. 86.
Motor Vehicles, 42 C. J. p. 1228 n. 51; p. 1287 n. 21.

Defendants appealed from an order of the district court for Hennepin county, Salmon, J., denying their motion for a new trial. Reversed and new trial granted.

*K. A. Campbell* and *H. W. Volk,* for appellants.
*Halpern & Hokenson,* for respondent.

[1]Reported in 216 N. W. 233.

TAYLOR, C.

Plaintiff, as father of Elmer Morner, 13 years of age, brought this action to recover for injuries alleged to have been sustained by Elmer through the negligent operation of an automobile owned by defendant Max A. Kohen and driven by his wife, the other defendant. The jury returned a verdict of $6,500. Defendants moved for a new trial. The court granted a new trial unless plaintiff consented to reduce the verdict to the sum of $3,500, but denied a new trial if plaintiff consented to reduce the verdict to that sum. Plaintiff consented to the reduction. Defendants appealed.

Defendants assert that excessive damages were awarded by the jury under the influence of passion and prejudice; that improper evidence tending to create prejudice was admitted; that the court erred in refusing to reopen the case and permit defendants to present further evidence before the beginning of the argument to the jury; that plaintiff's attorney was guilty of misconduct which tended to create prejudice; and that the court erred in excluding photographs of the place of the accident.

The accident happened on February 12, 1925, at the intersection of Twenty-first street south and Penn avenue in the city of Minneapolis. Twenty-first street extends east and west; Penn avenue north and south. A drug store fronting on Twenty-first street is located at the southeast corner of the intersection, and a grocery store is adjacent on the east. Mrs. Kohen was driving north on Penn avenue intending to turn east into Twenty-first street and stop at the grocery store. Elmer riding a bicycle was proceeding west on Twenty-first street. Elmer says that he was riding within two or three feet of the curb on the north side of Twenty-first street; that he looked both up and down Penn avenue as he approached the intersection but did not see defendant's car until it was within 15 or 20 feet of him; that the brakes were applied on the car but it struck the front wheel of his bicycle; that he fell toward the car face downward on the pavement with his arms outstretched; that the right rear wheel of the car skidded onto his left hand pinning it to the pavement; that he called out to the driver to go ahead so he could get his hand from under the tire, but she backed over it;

that he got up and went into the drug store where the druggist washed and bandaged his hand; that Mrs. Kohen drove her car into Twenty-first street and then followed him into the drug store where she disclaimed any responsibility for the happening of the accident and then left. After the druggist had bandaged the hand, a clerk in the store took Elmer home in the druggist's car and from there to Dr. Meleck, who dressed the wound.

At the trial defendants claimed that Elmer was not riding on the north side of Twenty-first street as he claimed, but was riding on the sidewalk on the south side of that street and rode off the sidewalk into Penn avenue at the same time that the automobile reached that crossing. Elmer and Mrs. Kohen were the only eye witnesses. The evidence was closed and both parties rested Friday afternoon and court adjourned to Monday morning. During the adjournment defendants learned of several witnesses previously unknown to them who were at the place of the accident at or a few minutes after the time it occurred, among them several boy scouts belonging to the same troop to which Elmer belonged who were at the place of the accident two or three minutes after it happened and found the skid marks at the place where Mrs. Kohen said it happened.

Defendants had these witnesses in court when it opened Monday morning, and at the opening of court outlined the nature of their testimony and asked permission to open the case and present it. Defendants also stated that they had made an investigation previous to the trial for the purpose of finding anyone who knew anything about the matter but did not discover these witnesses, and further stated that they would provide automobiles for the purpose of procuring any witnesses that plaintiff might desire in rebuttal. After a somewhat lengthy colloquy the court denied the application, apparently on the ground that it would cause delay and would inconvenience other litigants who were waiting to begin the trial of other cases.

Dr. Meleck attended Elmer until the wound healed, and at the trial testified to the nature and extent of the wound and the present

condition of the hand. The wound was a jagged cut extending from the proximal joint of the left thumb along the outer side over the head of the radius and along the inner side of the wrist to a point about midway between the wrist and the elbow. The cut went down to the bone and severed some of the blood vessels and some of the tendons by which the muscles are attached. No bones were broken. The doctor sutured one tendon and took eight stitches to close the wound. A noticeable scar remains, and there is a contraction of the tissues along it. The joints of the hand and wrist are apparently uninjured, but the injury to the tendon lessens the effectiveness of the thumb in gripping anything. The doctor estimated that there was a loss of 20 to 25 per cent of the normal use of the thumb and of at least ten per cent of the normal use of the hand resulting mainly from the condition of the thumb. Elmer was out of school from February 12 to February 20, and was again out three days in the first week of March and two days in the second week. Aside from those absences he attended school regularly. Defendants called no experts, and the testimony of Dr. Meleck is accepted as correct by both parties.

After Elmer had been taken to the doctor, the druggist called up Mrs. Kohen at her home by telephone and upbraided her for not looking after the boy and taking him to the doctor herself. Plaintiff's attorney asked him to state what he said to her over the phone. Defendants objected, but the objection was overruled and he repeated the statements made to her. The admission of this testimony was clearly error. It was no part of the res gestae. No statement made by Mrs. Kohen was asked for or given, but only the rather heated statements of the druggist, which were clearly of a nature to incite prejudice.

Mrs. Kohen did not give her name and address at the time of the accident, but lived nearby, traded at the grocery and was well known to the druggist and others present. In his opening to the jury, plaintiff's counsel asserted that her failure to leave her name and address was a violation of law and showed that "she was going along unlawfully and she was trying to get away." Objection was

promptly made. In his closing argument he called attention to and emphasized the statements of the druggist to Mrs. Kohen and persisted after objection was made.

The jury returned a verdict of $6,500, which the court reduced to $3,500. The erroneously admitted testimony and the conduct of plaintiff's attorney tended to incite prejudice, and the grossly excessive verdict indicates that the jury must have been influenced by prejudice. And the prejudice reflected in the verdict may have affected the determination of the other issues presented. At least we are unable to say it did not.

As there must be a new trial there is no need to consider the refusal to open the case and receive the testimony of the new witnesses, but it may not be amiss to say that the excluded photographs were properly admissible in evidence.

Order reversed and a new trial granted.